Honorable O. P. Lockhart, Chairman - Page 9

Prior to the passage of Article 1302a in 1925, title insurance Companies could be incorporated under Subdivision 57 of Article 1302, as well as under Subdivision 10 of Article 4939, but Article 1302a provided that from and after its passage no corporation shall be chartered under Subdivision 57 of Article 1302, and that all such corporations should thereafter be subject to the provisions of said Article 1302a and the rules and regulations prescribed under authority thereof by the Board of Insurance Commissioners.

Said Article 1302a provides that foreign corporations shall be permitted to do business in this State on exactly the same basis and subject to the same rules, regulations and prices and supervision as fixed for Texas corporations.

Section 2 of Article 1302a provides that any corporation organized thereunder having the right to do a title insurance business may invest as much as fifty per cent of its capital stock in an abstract plant or plants, provided the valuation to be placed upon such plant or plants shall be approved by the Board of Insurance Commissioners of this State; provided, however, that if such company is not doing a trust business as authorized by Section 1, Article 4 of said Act, and has complied with Section 6 thereof, providing for a deposit of $100,000 in securities with the State Treasury, such of its capital stock in excess of fifty per cent, as deemed necessary by its Board of Directors may be invested in abstract plants; and provided further that not more than one abstract plant shall thereafter be acquired in any one county, or any plant in any county of this State having a population of less than 90,000 according to the last preceding Federal Census.

It is apparent that Article 1302a authorizes the investment of the capital of a title insurance company in an abstract plant or plants to the extent of at least fifty per cent thereof, and when said corporation is not also engaged in a trust business and has provided the $100,000 deposit above referred to, a greater per cent of said capital stock can be invested in an abstract plant or plants as deemed necessary to its business by its Board of Directors, which investment or investments in either event could be in part in real estate. It is also our opinion that any of the capital stock thereof remaining after the investment in an abstract plant or plants, as above outlined, could be invested in real estate as we find no law requiring the refusal of a corporate charter because a portion of a corporation's capital stock has been invested in real estate, even though it is not specifically authorized under the law to hold same. This investment would be subject to Arts. 1360 - 1361 in regard to its alienation within fifteen years.

Article 12, Section 6 of the Constitution of Texas, provides that: "No corporation shall issue stock or bonds except for money paid, labor done or property actually received, and all fictitious increase of stock or indebtedness shall be void." Our Supreme Court has held that the conveyance of land to a corporation in payment of capital stock therein is valid where no question is raised as to the value of the land. Cole, et al. v. Adams, 46 S. W. 790. It is also well settled that the purchase of land by a corporation which is not authorized by its charter to acquire and own real estate is not void, but is good and binding as to all the world except the State. It is our opinion, therefore, that a title insurance company would be authorized to invest at least a part of its capital stock in real estate. See also our Opinion No. 0-4587-A, addressed to you and approved December 14, 1942.

A different rule, however, will obtain as to the deposit of $100,000 with the State Treasurer or other depository under Section 6 of Article 1302a, as well as the five per cent reserve required under Section 10 thereof, as such deposit and reserve are required to be invested in such securities as are admissible for investments by life insurance companies under the laws of this State. This does not include real estate.

If any part of said capital stock is also used in making the $100,000 deposit required by Section 6 of said Article 1302a, that part of same could not be composed of real estate, but would have to be composed of cash or such securities as are admissible for investment by life insurance companies under the laws of this State, and this would not include real estate. See that part of our Opinion No. 0-4587, addressed to you, and approved on October 16, 1942, beginning on page 6 thereof and in answer to your question No. 3 and to page 9 thereof where said opinion refers to your question No. 4.

Chapter 11, Title 78 (Article 4919 - 4932) provides for the doing of a fire and marine insurance business in this State, and Article 4924 sets out the conditions upon which said companies may hold real estate, as follows:

"No fire, marine or inland insurance company organized under the laws of this State shall purchase or hold any real estate, except --

"1.  Such as shall be requisite for its convenient accommodation in the transaction of its business.

"2.  Such as shall have been mortgaged to it in good faith by way of security for loans previously contracted or for money due.

"3.  Such as shall have been conveyed to it in satisfaction of debts previously contracted in the legitimate business of the company or for money due.

"4.  Such as shall have been purchased at sales under judgments, decrees or mortgages obtained or made for such debts.

"All lands purchased or held in violation of this article shall be forfeited to the State.  Id."

No specific provision has been made relative to how long such real estate can legally be held by companies organized under said chapter.  Therefore, since Article 4715 provides that the laws governing corporations in general shall apply to and govern insurance companies incorporated in this State insofar as the same are not inconsistent with the provisions of this Title (Title 78), the general laws governing the holding of such real estate would control and such companies would have fifteen years from the time said real estate was acquired in which to dispose thereof.  (Articles 1360 - 1361)

Articles 4969 - 4981 of Chapter 16, Title 78, deal with surety companies and, since there is nothing in said statutes prohibiting investment of the capital or other assets of such companies in real estate, under the general rule hereinabove set out such investment or investments can be made.  As to foreign companies, this would be limited to the capital stock and other assets over and above the amount of the deposit required to be made by said statute in securities, and the holding thereof would be limited to fifteen years, as provided by Articles 1360 - 1361.

Understanding from your inquiry as to mutual corporations that you are asking whether or not such corporations are subject to the same rules as are applicable to stock companies

Honorable O. P. Lockhart, Chairman - Page 12

writing similar lines of insurance insofar as the acquisition, alienation and duties of your office concerning Texas real estate are concerned, you are advised that this is the rule set out in the statutes dealing with such matters.

Article 4818 provides that: "Mutual life insurance companies shall invest their funds in accordance with the provisions of the third chapter of this title, concerning investments of life insurance companies of this State; . . . ." Article 4819 provides that: "The provisions of chapter 3 of this title when not in conflict with the articles in this chapter, shall apply to and govern mutual life insurance companies organized under the provisions of this chapter." There does not seem to be any conflict in said matters, therefore, Chapter 3 shall apply to and govern mutual life insurance companies organized under said Chapter 7.

See also Article 4781, Chapter 5; Articles 4872 and 4873, Chapter 9; and Articles 4946 and 4948, Chapter 12; (These articles and chapters have been repealed, but are still effective as to any companies covered thereby still doing business by authority of said chapter; Acts 1929, 41st Legislature, 1st Called Session, page 90, Chapter 40, Section 18.) Article 4860a, Sections 12, 13, 14, and 15; Article 4860a - 20, Section 16; Article 4875a, 18; and Article 4941. Any mutual company having a certificate of authority to do an insurance business in this State would be subject to the laws of this State governing companies doing a similar business even though the statutes do not so specifically provide.

You are incorrect in the assumption that Lloyds, Reciprocals and Fraternals, either domestic or foreign, are without statutory limitation or requirement insofar as their Texas real estate is concerned, as our statutes are very definite in dealing with real estate owned by such companies or associations.

Chapter 19, Title 78, deals with insurance companies operating on the Lloyd's Plan and Articles 5017 and 5017d thereof make the following provisions relative to the assets and investments of said companies or associations:

"Art. 5017. Assets

"No attorney shall be licensed for the under-
writers at a Lloyd's under this Chapter unless the
net assets contributed to the attorney, a committee
of underwriters, trustees or other officers as pro-
vided for in the articles of agreement, shall be at
least Sixty Thousand Dollars ($60,000) in cash or
securities that are eligible for investment of the
capital stock of stock insurance companies trans-
acting the same sort of business; nor shall any at-
torney be licensed for any underwriters at a Lloyd's
to transact more than one kind of business as defined
in Article 5015 of this Chapter, unless the net as-
sets, as they are herein defined, belonging to such
underwriters at Lloyd's, shall be as much as Ten
Thousand Dollars ($10,000) additional for each addi-
tional kind of insurance designated in the application
for license; and such additional amounts to be in-
vested, if at all, in like securities as required
for the minimum sum mentioned. As amended Acts 1943,
48th Leg., p. 605, ch. 350, § 1.

"Art. 5017d. Investments

"The assets of underwriters at a Lloyd's to the
extent of the minimum required under the provisions
of Article 5017, as amended, of this Chapter shall
be cash or shall be invested in such securities as
are eligible for investment of the capital stock of
stock insurance companies transacting the same sort
of business, and the other assets of underwriters
shall be invested, if at all, in such property or
securities as the funds of a stock insurance company
doing the same sort of business may be invested in,
except real estate, and except that only the surplus
of a Lloyd's may be invested in the securities eligible
for investment of surplus of such similar stock in-
surance company.

"Provided, however, that no Lloyd's already
organized and doing business under license from the
Board of Insurance Commissioners of this State shall
be required to conform to this Article as hereby
amended except as to securities hereafter acquired,
whether in substitution for securities now held or
from additional, successor, or substituted under-
writers. As amended Acts 1943, 48th Leg., p. 606,
ch. 351, § 1."

Honorable C. P. Lockhart, Chairman - Page 14

It appears from these statutes that insurance companies or associations operating on the Lloyd's Plan must keep their assets in cash, or invested in securities eligible for investment of the capital stock of stock insurance companies doing the same kind of business, and that they cannot invest any of their funds in real estate under the laws of Texas, except as may be necessary to protect their funds, in which event same would have to be alienated within the time given to domestic stock companies doing the same kind of business. All of the provisions of this law also apply to foreign Lloyd's. (Article 5022b).

Chapter 20, Title 78, (Articles 5024 - 5033a) provides for the operation of reciprocal insurance companies or exchanges, and Article 5029 thereof sets out the financial requirements of such exchanges, which are that the required assets of such exchanges shall be maintained in cash or securities of the kind in which general casualty companies are authorized by law to invest or lend funds. There is the further provision that, if fidelity and surety bond insurance is exchanged in this state by a reciprocal exchange, there shall be kept on deposit with the State Treasurer of Texas money, bonds, or other securities, in an amount not less than $50,000, also that any foreign exchange shall satisfy the Board of Insurance Commissioners that it has on deposit in its home state $100,000 in money, bonds or other securities for the protection of its policy holders. Real estate is not included in any of these provisions, therefore, it is our opinion that a reciprocal exchange is not authorized to own or hold real estate in Texas under the laws of Texas, except as may be necessary to carry into effect its purposes, (Article 4994) in which event such real estate would have to be alienated as required by Article 5008.

Chapter 8, Title 78, covers fraternal benefit societies and Article 4836 thereof provides that such societies shall invest their funds only in securities permitted by the laws of this state for the investment of the assets of life insurance companies, and that, if any foreign society invests its funds in accordance with the laws of the state in which it is incorporated, it shall be held to meet the requirements of this law for the investment of its funds. You are advised, therefore, that fraternal benefit societies are not authorized under the laws of Texas to own or hold real estate in Texas, except such as may be acquired in good faith by way of security for money loaned, or for money due, and such real estate must be disposed of as provided by Article 4726.

Section 1 of Article 4682 requires the Board of Insurance Commissioners to "see that all laws respecting insurance and insurance companies are faithfully executed." Under various and sundry statutes insurance companies are required to make reports to the Board of Insurance Commissioners showing their assets and the value thereof, the Board of Insurance Commissioners is authorized to make examinations of such companies, and it is the duty of the Board of Insurance Commissioners to pass upon and see that all investments by insurance companies of their assets and capital in Texas real estate are authorized by law and that the real estate so held is of the value stated.

Trusting that this satisfactorily answers your inquiry, we remain,

Yours very truly

ATTORNEY GENERAL OF TEXAS

ATTORNEY GENERAL OF TEXAS

By Robert L. Lattimore, Jr.
Robert L. Lattimore, Jr.
Assistant

By Jas. W. Bassett
Jas. W. Bassett
Assistant

RLL&JWB/pw



APPROVED
OPINION
COMMITTEE
BY CHAIRMAN